UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TRACY GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:19-CV-139-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| MCCREARY COUNTY, KENTUCKY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Tracy Gibson sued McCreary County and Sheriff Randy Waters (individually and in his official capacity as Sheriff of McCreary County) after her arrest, detention, and prosecution for disorderly conduct, second degree. *See* DE 1 ¶¶ 11-39. (Complaint). Defendants moved for summary judgment twice—once on the merits and once after Gibson failed to respond to the prime motion. *See* 24 (Motion); DE 28 (Second Motion). Gibson, case initiator, has wholly failed to respond.

The Court GRANTS the motions. Defendants establish the right to summary judgment based on the motions and supporting materials, as affected by the failure to respond, under Rule 56(e).

## Background

In early January 2018 Darren Kidd—Plaintiff's second cousin-in-law—went missing in McCreary County. *See* DE 22 at 40:16 (Tracy Gibson Dep.). Darren's mother, Patsy Gibson, enlisted Tracy Gibson to investigate and help find Darren. *See id.* at 44:15-24. Gibson's investigation is the genesis of matters in the crosshairs of this lawsuit.

1

The McCreary County Sheriff's Department (MCSD) initiated an investigation into Darren's disappearance upon receiving a 9-1-1 emergency call reporting Darren as missing. *See* DE 20 at 16:1-13 (Sheriff Waters Dep.). MCSD took information from the caller and searched for him that same day. *See id.* at 16:14-17. Running parallel to MCSD, Gibson, a lay person, kickstarted her own investigation. She began asking people if they knew anything about the circumstances of Darren's disappearance. *See id.* at 50:11-21. She also posted on Facebook, allowing community members to message her directly with information. *See id.* at 51:25-52:15. Throughout her investigation, she reached out to community members and posted on Facebook purporting to share facts on Darren's disappearance. *See* DE 24-8 (Facebook Thread Concerning Darren's Case); DE 24-11 (Nicky Yancey Facebook Response to Gibson); DE 24-12 (Tawnie Garner Facebook Response to Gibson). However, Gibson admitted that sometimes she would post false information hoping that somebody might "slip up and get caught or something." *See* DE 22 at 162:11-163:3 (Tracy Gibson Dep.). One of these included posts about who was present when Darren "was killed." *See id.* at 165:11-20. On another occasion, and key here, Gibson claimed, evidently without facts, that someone found a dead body in the trunk of a car. *See* DE 24-11 (Nicky Yancey Facebook Response to Gibson). This, and the full course of Gibson's actions, led community members to complain about Gibson's investigatory endeavors to Sheriff Waters "about every day." DE 20 at 45:4-16 (Sheriff Waters Dep.).

The Sheriff viewed Gibson's actions as an impediment, which led Sheriff Waters address Gibson directly. *See id.* at 36:5-37:22, 39:6-40:25, 45:4-46:2, 54:7-24 (Sheriff Waters Dep.). Sheriff Waters asked Gibson over Facebook to come forward with

2

information. *See id.* at 41:9-12; DE 24-5 (Facebook Messages Between Sheriff Waters and Gibson). She never showed. *See id.* at 41:21-25. She even refused to accept MCSD's certified letter requesting pertinent information. *See id.* 38:7-21. Sheriff Waters and other community members persisted in asking her to stop. *See* DE 24-5 (April 22, 2018, Facebook Messages Between Sheriff Waters and Gibson); DE 24-6 (April 25, 2018, Cease and Desist Letter from Sheriff Waters to Gibson); DE 24-12 (Tawnie Garner Facebook Message); DE 24-13 (Facebook Post). Gibson pressed on. There was indication that the information Gibson spread, which included unsubstantiated reports and accusations, but also false breaks and discoveries, was causing harm and upset in the families of missing persons.[1]

After fruitlessly contacting Gibson, Sheriff Waters consulted counsel for two days about how to address her activities. *See* DE 20 at 85:3-86:6 (Sheriff Waters Dep.). Two assistant county attorneys listened to Sheriff Waters's predicament. Both believed and advised there was probable cause to charge Gibson with second degree disorderly conduct based on her flow of alarming information to the community. *See id.* at 54:20-56:11; *see also* DE 18 at 10:11-11:9, 18:3-7 (Jones Dep.). Waters then completed a criminal complaint, obtained a signed arrest warrant (signed by the district judge), and KSP and MCSD later executed the warrant at Gibson's house. *See* DE 20 at 59:12-61:22 (Sheriff Waters Dep.).

KSP and at least one MCSD deputy executed the warrant. *See id.* at 60:14-61:22. The officers spoke with Gibson and her husband, handcuffed Gibson, grabbed her upper

---

[1]Kayakers later found Darren Kidd's body in a river; an autopsy revealed there were no signs of trauma apart from what water would have caused. *See* DE 20 at 28:2-29:9 (Sheriff Waters Dep.).

arm, and pulled her out the door to the car. *See* DE 22 at 109:1-111:25 (Tracy Gibson Dep.). Gibson sustained bruises on her wrists and upper arm but never complained about them or sought medical treatment. *See id.* She was taken to the Leslie County Detention Center and expressed concerns about her confinement. *See id.* at 112:14-113:12. The jailers listened, reassured her that nothing would happen to her, and, based on her concerns, placed Gibson in a separate holding cell with another lady. *See id.* She spent twelve hours in that Leslie County Detention center cell with a lady who—although "awkward" and "wanted to be close"—never laid hands on Gibson. *See id.* at 119:3-25. Gibson never complained to anyone about the conditions of her detention. *See id.* at 120:10-13. Gibson promptly bonded out.

Eventually, per the recommendation of Sheriff Waters and the county attorney, the district court dismissed the disorderly conduct charge against Gibson, with prejudice, after Gibson agreed to stop posting information on Facebook. *See* DE 24-20 (Commonwealth v. Gibson Docket); DE 20 at 87:2-7 (Sheriff Waters Dep.); DE 17-1 at 2. Gibson later filed this federal suit. *See* DE 1 (Complaint).

## Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the nonmovant's evidence and draw all justifiable inferences in the nonmovant's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

4

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Lindsay*, 578 F.3d at 414. If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). Thus "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356. Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

Gibson's failure to respond has a significant effect. Summary judgment by default is not proper. However, under Rule 56(e), a non-movant's failure to respond permits a court to treat unopposed (and otherwise properly supported) facts as undisputed for purposes of evaluating the propriety of judgment. A non-movant "must" support assertions or counter-assertions pertinent to the rubric, under Rule 56(c)(1). The Rule

does not require a court to mine the record for evidence; indeed, the "court need consider only the cited materials." *Id.* at (c)(3); *see also Zucker v. City of Farmington Hills*, 643 F. App'x 555, 567 (6th Cir. 2016) (confirming no duty to "search the entire record" in evaluating presence or absence of genuine dispute).

## Discussion

### *(a) Federal Claims as to McCreary County*

Gibson sued McCreary County[2] in Count I under 42 U.S.C. § 1983 claiming that McCreary County is liable for Sheriff Waters's alleged conduct based on *respondeat superior*. *See* DE 1 ¶ 20. Gibson also sued Sheriff Waters in his official capacity, which is simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 98 S. Ct. 2018, 2053 n.55 (1978). However, MCSD "cannot be held liable under § 1983 on a *respondeat superior* theory." *Cf. Monell*, 98 S. Ct. at 2036; *Wright v. City of Euclid*, 962 F.3d 852, 879 (6th Cir. 2020). Thus, Count I as to MCSD based on *respondeat superior* must fail as a matter of law.

Gibson does allege, in passing, that McCreary was responsible for establishing MCSD policies or customs—seemingly an allusion to a "failure to train" or policy-based theory of liability.[3] *See generally City of Canton, Ohio v. Harris*, 109 S. Ct. 1197 (1989). Under such a theory, the governmental entity typically is liable only if the "failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton*, 109 S. Ct. at 1204. However, Gibson did not reinforce or detail this theory of liability in any way. The record lacks any indication that McCreary

---

[2] The Court will treat the County and the Sheriff's office as one functional target.
[3] In her Complaint, Gibson bypassed *Monell* liability entirely, in favor of resting exclusively on a *respondeat superior* theory. *See* DE 1 ¶ 20.

County's training policies or customs cultivated deliberate indifference toward Gibson or others. Gibson points to no particular policy. And Gibson did not respond to the motions for summary judgment. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Therefore, the Court **GRANTS** DE 24 on Count I as to McCreary County and Sheriff Waters in his official capacity.

### *(b) Federal Claims Against Sheriff Waters in his Individual Capacity*

Gibson also sues Sheriff Waters in his individual capacity under 42 U.S.C. § 1983. Gibson, in kitchen-sink mode, alleges that Sheriff Waters violated the First, Fourth, Fifth,[4] and Eighth (but really Fourteenth) Amendments through "[t]he intentional infliction of emotional distress and excessive use of physical force upon Plaintiff, as well as the wrongful arrest, malicious prosecution, and false imprisonment." *See* DE 1 ¶¶ 1, 20. Sheriff Waters claims qualified immunity. *See* DE 4 at 4; DE 24-1 at 30-33. But if— as here—no constitutional violation occurred, the Court "need not reach the issue[] of qualified immunity." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 767, n9 (6th Cir. 2010) (citing *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir.2006)). Therefore, for the reasons highlighted below, the Court **GRANTS** DE 24 as to Count I against Sheriff Waters and does not analyze Sheriff Waters's qualified immunity defense.

---

[4] The Fifth Amendment is an improper vehicle for Gibson's challenge to her arrest and detention. *See Estep v. Combs*, 366 F. Supp. 3d 863, 882 (E.D. Ky. 2018) (Wier, J.). Rather, the Fourth Amendment "define[s] the 'process that is due' for seizures of persons or property in criminal cases." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (quoting *Gerstein v. Pugh*, 95 S. Ct. 854, 870 n.27 (1975)).

*(1) Fourth Amendment Excessive Force*

Gibson's Fourth Amendment excessive force claim fails. First, § 1983 liability hinges on individual conduct; Plaintiff must cite to behavior by Sheriff Waters himself, relative to a claim, to establish individual liability. Sheriff Waters was not present for or otherwise directly involved in the circumstances of arrest, so he could have no individual liability for the circumstances. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

Additionally, the claim fails because no reasonable juror could find that the officers effectuating her arrest used excessive force. Fourth Amendment excessive force claims are assessed under an objective reasonableness standard demanding a fact-specific inquiry weighing "the costs to the individual against the government's interest in using force." *Morrison v. Bd. of Trs.*, 583 F.3d 394, 404 (6th Cir. 2009). Further, specific to claims of excessive force with handcuffs, Gibson must establish three elements to survive summary judgment: "(1) [she] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id.*

Here, the physical force used during Gibson's arrest was objectively reasonable. Force only occurred when an officer, not Sheriff Waters, handcuffed Gibson, grabbed her arm, and "pulled [her] out the door." *See* DE 22 at 109:25-110:9 (Tracy Gibson Dep.). The Sixth Circuit has addressed virtually identical claims in *Smith v. City of Wyoming* and affirmed summary judgment for defendants. 821 F.3d 697, 717-18 (6th Cir. 2016). In *Smith*, the Sixth Circuit held that police officers did not use excessive force to arrest the plaintiff for a minor crime (obstructing official business) that resulted in handcuff

bruising, emotional distress, and bruising from tightly grabbing the plaintiff. *See id.* at 718.

As in *Smith*, Gibson was arrested for a minor crime and sustained bruising from her handcuffs, emotional distress, and bruising where an officer grabbed her shoulder. *See* DE 22 at 109:25 110:9 (Tracy Gibson Dep.). Also, as in *Smith*, Gibson never complained of the cuff application or her injuries—an essential element for her handcuffing claim. *See id.* at 110:23-111:1. When the Sixth Circuit decided *Smith* it cast the die in this case too—there was no excessive force in arresting Gibson. The § 1983 excessive force claim fails as a matter of law because she did not suffer a constitutional violation.

### (2) Fourth Amendment Wrongful Arrest[5]

Gibson's Fourth Amendment wrongful arrest claim also fails because probable cause, independently assessed, supported the arrest warrant. "In order for a plaintiff to prevail on a theory of wrongful arrest under § 1983, [the plaintiff] must prove that the police lacked probable cause." *Frodge v. City of Newport*, 501 F. App'x 519, 526 (6th Cir. 2012). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *United States v. Pearce*, 531 F.3d 374, 380-81 (6th Cir. 2008) (internal citation and quotations omitted). In evaluating probable cause, the Court looks at the totality of the circumstances from the perspective of a reasonable officer. *See Frodge*, 501 F. App'x at

---

[5] Gibson also alleges false imprisonment. However, "the Fourth Amendment does not adopt separate bans on 'false arrests,' 'false imprisonments,' and 'malicious prosecutions.'" *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). Thus, Gibson simply "alleg[es] the same constitutional theory" by claiming the officers falsely imprisoned her. *Id.*

526. Here, Sheriff Waters's complaint went through two public prosecutors and then before an independent judge, and that judge signed the arrest warrant. Gibson does not allege falsity in the complaint content. The judge blessed the cause supporting the arrest; this provides stout armor to Sheriff Waters. *See Beckham v. City of Euclid*, 689 F. App'x 409, 414 (6th Cir. 2017) ("An arrest 'pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or imprisonment.'") (quoting *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014), further cite omitted)).

Here, Sheriff Waters had probable cause to arrest Gibson for disorderly conduct in the second degree.[6] Sheriff Waters helped MCSD investigate Kidd's disappearance by interviewing community members, fielding and following-up on tips, and going to Kidd's house. *See* DE 20 at 16:1-27:16 (Sheriff Waters Dep.). Gibson, however, impaired his investigation by broadcasting misinformation on Facebook and directly to community members, threatening community members, and causing alarm in the community, to include the families of various missing persons. *See id.* at 36:5-37:22, 39:6-40:25, 45:4-46:2, 54:7-24. She never attempted to participate in MCSD's investigation. *See id.* at 34:9-25. She refused to even accept MCSD's letter asking her to come forward with

---

[6] KRS § 525.060 states as follows:

> (1) A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>> (a) Engages in fighting or in violent, tumultuous, or threatening behavior;
>> (b) Makes unreasonable noise;
>> (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or
>> (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
> (2) Disorderly conduct in the second degree is a Class B misdemeanor.

any pertinent information. *See id.* 38:7-21. Sheriff Waters and others tried to deter Gibson's actions, to no avail. *See* DE 24-5 (April 22, 2018, Facebook Messages Between Sheriff Waters and Gibson); DE 24-6 (April 25, 2018, Cease and Desist Letter from Sheriff Waters to Gibson); DE 24-12 (Tawnie Garner Facebook Message); DE 24-13 (Facebook Post). When she persisted, community members complained of her activity to Sheriff Waters directly. *See* DE 24-17 (Message from Leah Stanfill to Sheriff Waters); DE 24-18 (Message from Christy Meadows to Sheriff Waters).

Sheriff Waters got advice on options directly from the county attorney structure, consulting two prosecutors in that office. *See* DE 20 at 85:3-86:6 (Waters's Dep.). Based on the legal advice, from the authorized public prosecutors, Sheriff Waters prepared a complaint charging Gibson with second degree disorderly conduct. *See id.* at 54:20-56:11. Sheriff Waters completed a criminal complaint, obtained a signed arrest warrant, and KSP and MCSD later executed the warrant. *See id.* at 59:12-61:22. Judge White, on consideration of the complaint, issued the warrant. *See* DE 24-16.

The totality of circumstances, undisputed on this record, supports probable cause. Gibson's repeated unbridled behavior and peddling of misinformation created physically offensive conditions through gratuitous acts that only alarmed and annoyed the public. *See* KRS § 525.060(a), (d). She even admitted that she occasionally seeded false information. *See* DE 22 at 162:11-163:3 (Gibson Dep.). The particular information, regarding the location of a body, directly and sharply impacted the families of multiple victims.

Sheriff Waters vetted the charge through two public prosecutors, and a neutral judge issued the warrant. It is the warrant that provided the authority for arrest. In this

context, there is no triable issue on probable cause,[7] and probable cause forecloses the dependent claims.

### (3) First Amendment Retaliatory Prosecution

Gibson also cursorily includes a potential First Amendment retaliation claim. *See* DE 1 ¶ 20. To the extent alleged, probable cause shields Sheriff Waters from a First Amendment retaliatory prosecution claim. "[T]he First Amendment prohibits officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 126 S. Ct. 1695, 1701 (2006) (analyzing retaliatory prosecution under *Bivens*). However, "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). Here, as analyzed above, Sheriff Waters had probable cause to arrest Gibson. Therefore, Gibson's First Amendment § 1983 claim shares the same fate as her Fourth Amendment wrongful arrest claim—it cannot survive summary judgment. Alternatively, the record admits of no fair relationship between Gibson's political-support activities and the conduct in this case. There is no triable issue on this claim.

### (4) Fourteenth Amendment Intentional Infliction of Emotional Distress

Although Gibson alleges Eighth Amendment violations, the Court construes her complaint under the Fourteenth Amendment because she was held briefly only in pretrial detention.[8] To establish a violation, Gibson must prove (1) an official's act or omission

---

[7] This is not to say the claim could not have been tested, both on the language under the statute and on the factual underpinning. Probable cause is a low, preliminary burden. The undisputed proof here and the route to warrant issuance validate the cause for arrest.

[8] "The Eighth Amendment does not apply to pretrial detainees." *Graham ex rel. Estate of Graham v. Cty. Of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004). Rather, "the

must be sufficiently serious, "result[ing] in the denial of the minimal civilized measure of life's necessities," and (2) the official must display "deliberate indifference to inmate health or safety." *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (quoting *Farmer v. Brennan*, 114 S. Ct. 1970 (1994). "[D]oublecelling, by itself, does not violate the [Constitution]." *Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003). Also, to recover damages, Gibson must allege more than a *de minimis* "physical injury." *See* 42 U.S.C. § 1997e(e); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003); *Lucas v. Nichols*, 181 F.3d 102 (6th Cir. 1999) (applying Eighth Amendment standards to pretrial detainees and requiring a showing of an actual physical injury before bringing a claim for damages arising from emotional distress).

Here, Gibson's claim fails. Once again, Waters played no part in the circumstances or particulars of her custody, and she cannot sue him for matters involving only others. Gibson was unharmed during the twelve hours spent at the Leslie County Detention Center and had no complaints at all about her treatment. *See* DE 22 at 119:3-120:23 (Tracy Gibson Dep.). She served her time in a cell with one other individual who—although "awkward" and "wanted to be close"—never laid hands on Gibson. *See id.* Gibson never complained to anyone about her conditions while detained. *See id.* at 120:10-13. Further, Gibson never alleged that she suffered any physical injury during her detention even though—as a matter of law—Gibson cannot claim damages without suffering a physical injury. *See* 42 U.S.C. § 1997e(e). Based on these facts, uncontested here, no reasonable juror could conclude that she suffered a constitutional

---

Fourteenth Amendment affords pretrial detainees a due process right . . . analogous to the Eighth Amendment rights of prisoners." *Id.*

violation during pretrial detention. Therefore, Gibson's Fourteenth Amendment claim fails.

The Court **GRANTS** DE 24 as to Count I against Sheriff Waters in his individual capacity.

### (c) State Law Claims Against McCreary County

Gibson sues McCreary County under Kentucky law for cruel and unusual punishment (Count III), false arrest (Count IV),[9] and malicious prosecution (Count IV). *See* DE 1 ¶¶ 28-39. The county claims sovereign immunity. *See* DE 4 at 2, 4. "A county government is cloaked with sovereign immunity." *See Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003). Thus, "absent a legislative waiver of immunity, [a county cannot] be held vicariously liable in a judicial court for the ministerial acts of its agents." *Id.*

Gibson has not alleged waiver in this context. Further, Kentucky courts have not found waiver applicable to Gibson's claims. In *Schwindel*, the Kentucky Supreme Court held that Kentucky has not waived sovereign immunity for claims of false arrest or malicious prosecution. *See id.* at 167. The same applies to cruel and unusual punishment claims for damages under *A.H. v. Louisville Metro Gov't. See* 612 S.W.3d 902, 906, 909-911, 914 (Ky. 2020). Thus, sovereign immunity shields McCreary County. The Court therefore **GRANTS** DE 24 as to Counts III and IV, along with any stray state law claims, against McCreary County.

---

[9] To the extent Gibson alleges false imprisonment arising from her false arrest, *see* DE 1 ¶ 20, the Court treats both claims as one. *See Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) ("When a false-imprisonment claim arises out of an alleged false arrest—as it does in this case—those claims are identical, so we will simply refer to those two claims together as a false-arrest claim.").

### (d) State Law Claims Against Sheriff Waters in His Official Capacity

Gibson also alleges multiple state law claims against Sheriff Waters in his official capacity. Officers sued in their official capacities are "cloaked with the same immunity as the government or agency he/she represents." *Schwindel*, 113 S.W.3d at 169 (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). County immunity protects Waters officially. *See id.*; *see also Yanero*, 65 S.W.3d 510, 521-22 ("Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity."). Therefore, the Court **GRANTS** DE 24 as to Counts III, and IV, and any other state law claims, against Sheriff Waters in his official capacity.

### (e) State Law Claims Against Sheriff Waters in His Individual Capacity

Gibson sues Sheriff Waters individually for intentional infliction of emotional distress (a.k.a. outrage, Count II), cruel and unusual punishment (Count III), and false arrest/imprisonment and malicious prosecution (Count IV). *See* DE 1 ¶¶ 21-39. As discussed earlier, Gibson claims state qualified immunity. *See* DE 4 at 4 (Answer). However, the Court need not reach the merits of Sheriff Waters's defense when Gibson cannot establish the "violation of a constitutional, statutory, or other clearly established right." *Cf. Rowan Cty. v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2006); *see also Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016) (noting that "if the plaintiff cannot prove [an element] the officer needs no immunity.").

### (1) Outrage

Gibson's outrage claim requires expert proof. *See Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012). The Court required Gibson to file expert reports by October 1, 2020,

*see* DE 9 at 4 (Scheduling Order); Gibson has not filed an expert report in the record or with opposing counsel. *See* DE 24 at 1-2. Further, she cites no expert proof to establish the severity of any distress. Thus, without expert testimony to reinforce her claim, Sheriff Waters is entitled to judgment as a matter of law on Gibson's outrage claim.

### (2) Cruel and Unusual Punishment

Gibson claims cruel and unusual punishment under the Eighth Amendment. *See* DE 1 ¶¶ 24-27. The contours of the claim remain vague. Gibson does not allege a specific Kentucky or federal statutory violation. She only alleges a violation of her Eighth Amendment rights. *See id.* ¶ 25. To the extent Gibson realleges federal constitutional violations arising from pretrial detention, the detention was constitutional, certainly vis a vis Sheriff Waters. *See supra* (b)(4). To the extent Gibson alleges violations of § 17 of the Kentucky Constitution, Kentucky lacks a 42 U.S.C. § 1983 statutory analog. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534-38 (Ky. 2011) (noting that neither the Kentucky Constitution nor any Kentucky statute "create[s] a private right of action for violations of the state constitution" and refusing to judicially create a tort for state-constitutional violations). The Court cannot decipher a claim for damages for cruel and unusual punishment based on Gibson's cursory allegations and lack of summary judgment response. And again, she pins no culpable acts directly on Waters. Therefore, the Court **GRANTS** DE 24 as to Count III.

### (3) False Arrest/Imprisonment and Malicious Prosecution

Gibson lastly sues Sheriff Waters in his individual capacity for false arrest/imprisonment and malicious prosecution. *See* DE 1 ¶¶ 28-39. Kentucky courts "refer to the torts of false imprisonment and false arrest together as false imprisonment."

*Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). "A law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual." *Id.* One such privilege includes "an arrest pursuant to a warrant." *Id.* Here, KSP and at least one MCSD sheriff deputy arrested Gibson pursuant to a warrant for disorderly conduct, second degree. *See* DE 20 at 61:4-22 (Sheriff Waters Dep.). This evidence is uncontroverted. Thus, Gibson's false arrest/imprisonment claim fails as a matter of law.

Also, to claim malicious prosecution under Kentucky law, Gibson must prove that Sheriff Waters acted "without probable cause." *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016). As this court discussed previously, however, probable cause supported Sheriff Waters's actions. The district judge's warrant issuance so indicates, severing any blameworthy linkage to Waters. Therefore, Gibson's malicious prosecution claim also fails.[10] The Court, therefore, **GRANTS** DE 24 as to Count IV against Sheriff Waters in his individual capacity.

## Conclusion

Defendants properly supported their summary judgment effort. Plaintiff wholly shirked the duty to respond, thus leaving the allegations undisputed and record unexamined. The Court has, despite that, carefully surveyed the case under the applicable law and the arguments. No triable claims appear. For the detailed reasons, the Court **GRANTS** DE 24 and DE 28 and **DIRECTS** the Clerk to **STRIKE** this matter from the Court's active docket. The Court will enter a separate Judgment.

---

[10] As with Count I, Gibson briefly mentioned a First Amendment violation in Count IV, yet again without support. The Court will not craft a claim that Gibson herself orphans. *See McPherson* 125 F.3d at 995-96.

This the 17th day of February, 2022

Signed By:

_Robert E. Wier_

**United States District Judge**